## CURTIS *vs.* FAY.

It is not necessary, in order to render a sheriff liable for the acts of his deputy, that he should be sued in his official capacity as sheriff, and facts sufficient to charge him by virtue of that relation be set out in the complaint.

The sheriff's liability for the acts of his deputy in the execution of process, rests upon the doctrine of principal and agent; and in all such cases, it is essential to prove the agency, upon the trial, if the fact is denied by the answer.

The authority of the deputy to act as the agent of the sheriff, and to bind him by his acts, can only be proved by the production of his appointment as deputy, by the sheriff, in writing, under his hand and seal. It cannot be proved by a certified copy of such appointment; nor by evidence that the deputy acted as such.

The general principle that the acts of officers *de facto* are as valid and effectual, when they concern the public or the rights of third persons, as though they were officers *de jure*, does not embrace such a case. Nor can it be applied to establish the liability of a sheriff for the wrongful acts of another, claiming to act as his deputy.

One having no personal knowledge of the character of a witness, but deriving his information solely from others, whom he does not know, is not qualified to testify in relation to the witness' character or reputation.

An impeaching or sustaining witness is not to speak of the reputation of the witness whose veracity is in question, unless he knows it; and such knowledge must be founded upon an acquaintance and intercourse with the neighbors and acquaintances of the witness sought to be impeached, sufficient to enable him to gather the general estimation in which such witness is held in the community where he resides.

MOTION by the defendant on a case with exceptions, to set aside a verdict taken at the Steuben circuit in January, 1861, and for a new trial. Exceptions ordered to be heard at the general term, in the first instance.

*Clark Bell*, for the defendant.

*Joseph Herron*, for the plaintiff.

*By the Court*, WELLES, J. The action was in the nature of trespass, for wrongfully taking the personal property of the plaintiff. The property alleged to have been taken by the defendant was 64,829 feet of pine lumber, estimated to be worth $650. The complaint was against the defendant as a private individual, and did not name him as sheriff of Steuben county, or attempt to charge him in any official character. The answer denied each and every allegation of the complaint, and every part thereof.

Upon the trial the plaintiff offered to prove that one Lewis Wood took the lumber in question, as a deputy of the defendant, by virtue of an execution upon a judgment in the supreme court against Samuel L. Jones and William Ringer. The defendant's counsel objected to this evidence, on the ground that the defendant was not sued as sheriff, and was not responsible for the acts of Wood, and could not be made so under the complaint. The court overruled the objection, and the defendant's counsel excepted. We think there was no ground for the objection, and that it was properly overruled. If the defendant was sheriff and Wood his general deputy, and as such received the execution, and levied upon property by virtue of it, the defendant was liable for such taking, to the true owner of the property who was not a defendant in the execution. This, as a general principle, is not denied by the defendant's counsel. But the point made by him is, that in order to charge the defendant by virtue of his relation to the deputy, he must be sued in his official capacity as sheriff, and the facts set out in the complaint sufficient to charge him by virtue of that relation. But we think that was not necessary. Whatever his deputy does in his character as such, in the execution of process directed to the sheriff,

he does by virtue of his appointment by the sheriff, and as his agent. And the theory of the sheriff's liability rests on the doctrine of principal and agent, and the maxim, *qui facit per alium, facit per se.* And it is no more necessary to aver in the complaint the facts showing that the acts complained of were done by the defendant's deputy, than it would be in any other case where the wrong complained of was done by a person other than the defendant, but by his direction, to aver the latter fact in the complaint.

But in all cases where it is sought to charge the wrongful act committed by the agent upon the principal, it is essential and indispensable to prove the agency upon the trial, when the fact is denied by the answer. This must be done in cases of private agencies between individuals, by original primary evidence, and cannot be done by evidence of reputation of the fact, though connected with proof that the agent acted, or had been in the habit of acting, in that character.

In the case now under consideration the plaintiff, in order to charge the defendant with the acts of Wood in taking the lumber in question, as well as to establish his ownership of the lumber, introduced the said Samuel L. Jones as a witness, who testified that he, as agent of the plaintiff, purchased the lumber in question of James H. Bacon; that Bacon delivered the lumber to him as such agent; that the lumber was paid for with the plaintiff's money; and that after such delivery of the lumber it was taken by Wood, he claiming to have in his possession the execution mentioned, and to levy on the lumber by virtue thereof. The plaintiff also introduced the said Bacon as a witness, to whom the following question was put: "Was Lewis Wood acting as deputy of the sheriff at that time?" (referring to the taking of the lumber by Wood.) The question was objected to by the defendant's counsel upon the ground, among others, that the fact that Wood was acting as deputy sheriff, would not bind the defendant, unless authorized or ratified by him. The court overruled the objection, and the defendant ex-

cepted. The witness answered as follows: "Lewis Wood was acting deputy sheriff at the time of the levy."

The plaintiff's counsel then offered in evidence a certified copy of the appointment, by Lewis D. Fay, of Lewis Wood as deputy sheriff; to which the defendant's counsel objected, on the grounds, 1. That the original should be produced. 2. That the signature to the original does not purport to have been proved or acknowledged, &c. The court overruled the objection, and the defendant's counsel excepted. The paper was then read in evidence. It appears to be a regular appointment of Wood as deputy sheriff, recites the fact that the person executing it, Lewis D. Fay, was sheriff of the county of Steuben, and is signed by him as sheriff. It is marked as filed January 1, 1856, by C. W. Campbell, clerk, and certified by S. M. Alley, clerk, to be a true copy of the original record of the same then on file in the Steuben county clerk's office. The certificate was under the county seal, and dated April 25, 1859.

The original appointment, of which the above was claimed to be a copy, was not produced at the trial, and no evidence was offered of its execution, and no excuse offered for its non-production.

It seems to me the admission of the clerk's certified copy was erroneous. After the plaintiff had rested the cause, the objection was renewed on a motion for a nonsuit, and again overruled; no evidence having at that time been given to supply the defect, excepting by Wood himself, who testified as follows: "I was acting as deputy sheriff in November, 1858; Lewis D. Fay was acting as sheriff at that time."

The statute requires that every appointment of an under sheriff or a deputy sheriff shall be in writing under the hand and seal of the sheriff, and shall be filed and recorded in the office of the clerk of the county. (1 *R. S.* 379, § 74; 4*th ed.* 697, § 131.) But it no where makes a certified copy evidence without proof of its execution by the sheriff. Chattel mortgages are required to be filed, in order to make them a

lien in certain cases; and no one, I apprehend, would contend that a certified copy could be read in evidence without proof of its due execution.

It was entirely competent for the plaintiff to produce the original by means of a *subpœna duces tecum* to the clerk, and then to have proved the execution by the sheriff, if he had executed it. It was the highest and best evidence to charge the defendant and hold him accountable for the acts of Wood as his deputy. There is no consideration of public convenience or policy to excuse the plaintiff from producing the highest grade of evidence which the nature of the case admits; certainly none which will allow him to recover against the defendant for acts done by another claiming to be acting for him and as his deputy, upon the strength of a paper sufficient in form but entirely unproved.

I do not overlook the general principle, which is undoubtedly well settled, that the acts of officers *de facto* are as valid and effectual, when they concern the public or the rights of third persons, as though they were officers *de jure*. But, in my judgment, that principle does not embrace the present case; and I venture the assertion that no case can be found where it has been applied to establish the liability of a sheriff for the wrongful acts of another claiming to act as his deputy. The law has provided higher and better evidence, which ought not to be dispensed with. All the cases that I have met with, where the principle referred to has been applied, were cases where the public or third persons only have been interested in the question; and the books are full of such cases.

Much evidence was given, on the trial, by the respective parties, upon the question whether the lumber was purchased by Jones on his own account, or as agent for the plaintiff. That question was a vital one in the cause; as the plaintiff would have no pretense for a recovery, if Jones purchased it for himself, on his own account. On that question Jones was examined and cross-examined at length, and gave very

Curtis *v.* Fay.

material evidence in favor of the plaintiff. After the plaintiff rested, the defendant introduced a number of witnesses, who testified that Jones' reputation for truth and honesty was bad, and that they would not believe him as a witness. To sustain him, the plaintiff produced several witnesses who testified that his character was good, and that they would believe him as a witness. Among them was Hiram Pritchard, who testified that he knew Jones, and had known him since May next previous to the trial. That he (Pritchard) lived in Corning. That " I have taken pains to inquire concerning his character, of business men at Geneva, and from business men living there concerning his character; I made the inquiries for the purpose of ascertaining what his character was. I had business transactions with Mr. Jones, and I made inquiries to satisfy myself what his character was, and went to Geneva expressly for that purpose. I do not know the people in Geneva where he lives. I did not make the inquiries for the purpose of becoming a witness here."

The plaintiff here proposed to ask the witness what the general character of Jones was, and whether the witness would believe him under oath. To this the defendant's counsel objected, on the ground that the witness was not sufficiently acquainted with the general character of Jones to testify on that subject. The court overruled the objection, and the defendant's counsel excepted. The witness then testified, that so far as he knew, Jones' character was good, and he most certainly would believe him on oath.

The witness Pritchard was not qualified to testify in relation to Jones' character or reputation. He did not know, himself, any thing about Jones' reputation. All he could testify on the subject of his reputation was what some persons at Geneva, whom he did not know, told him it was. An impeaching or sustaining witness is not to speak of the reputation unless he knows it, and such knowledge must be founded upon an acquaintance and intercourse with the neighbors and acquaintances of the individual whose character is

in question, and that intercourse must be of some length of time—sufficient, at least, to enable him to gather the general estimation in which he is held in the community where he resides.

The objection to Pritchard's evidence is that of necessity he could only testify what others told him of Jones' reputation, not what he knew of it himself—which would be nothing but reputation of reputation. (1 *Greenl. Ev.* § 461. *Douglass* v. *Tousey*, 2 *Wend.* 352.)

There are various other questions raised upon the argument, founded on exceptions taken at the trial; all of which I have examined, and am satisfied they were properly disposed of at the trial.

But upon the last two above considered, I am of the opinion that a new trial should be granted, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, March 3, 1862.   *Welles, Smith* and *Johnson*, Justices.]