### DENNIS PICKENS *v.* THE STATE.

1. EVIDENCE.    *General reputation.*

    In testing a witness' knowledge of the general reputation of another, it is not necessary that the witness should know what a majority or any definite number of his neighbors think of him. It is sufficient if he knows what the party's neighbors generally think of him as a man of truth and veracity

2. SAME.

    There must be a general concurrence in an estimate of one's reputation to make it general reputation or a reputation *which is general.* It is not enough that an impeaching witness professes merely to state what he has heard others say, for those others may be but few.

3. EVIDENCE.    *Qualification of witness.*

 A witness asked if he knows the general reputation of another must answer as a matter of conscience whether he does or not. If he answer that he does not, that is an end to the examination legally. If he answer that he does, he may be examined further, and on cross-examination the sources and extent of his information tested.

APPEAL from the Circuit Court of Lauderdale County.

HON. SAMUEL H. TERRAL, Judge.

The facts are stated in the opinion.

*Dial & Witherspoon,* for the appellant.

The court erred in ruling that in order to impeach the witness, Garrett, the impeaching witness, must be able to swear " what a majority of the people in Garrett's community, or the people with whom he was most conversant, say of his character for truth and veracity." The question as propounded and explained by prisoner's counsel to the witness, E. H. Miller, was correct, and is supported by all the authorities on the subject. Greenleaf's Evidence, Vol. I, § 461 ; Wharton Crim. Law 814. The court's interpretation has not a single authority to support or suggest it. No man's general reputation could ever be proved if it were necessary that witness be able to swear what a *majority* thought of it. As no witness can ever possibly know precisely how many people constitute any community, it is consequently an impossibility to swear whether the people he may have heard speak of the man's character constitute a majority or not. A " majority " can never be ascertained without first knowing the whole number. This interpretation of the rule has in it too much mathematical accuracy. The very word " general," which is always required to be used in asking the question, itself negatives the strict idea which the word " majority " conveys. Of course, the answers of the other witnesses as to Garrett's " general reputation " for truth and veracity, Mark Porter and Wade King, were made in the light of the court's interpretation of the rule. The fact that the witness, Wade King, answers that he does not know what " a majority " think of Garrett's character shows that his answer was made in accordance with that ruling, and that he was held to this interpretation.

*S. A. Witherspoon* also argued the case orally.

*J. L. Harris,* for the State.

General reputation is the concurrence of many voices—how many the courts have never settled. The witness for the, defendant was evidently perplexed by the interrogatory, and the court suggested that the opinion of a majority of the impeached witnesses' neighbors would suffice. This was not intended as a restriction or limitation, but was suggested in order to secure an answer which the witnesses seemed disinclined to make. This is shown by the fact that another witness was permitted to testify to "general reputation" without any reference being made to the majority rule. It may be doubted, however, if anything less than a majority would meet the requirement that the reputation shall be general. The term "general" imports something more than a majority, something approaching unanimity. If fifty-one out of a hundred men do not give credit to a witness for truth and veracity and the other forty-nine do, it cannot properly be said that his *general* reputation for truth, etc., is bad. In this view the suggestion of the court, for it was nothing more, was favorable to the defendant, and he cannot be heard to complain.

*J. L. Harris* also made an oral argument.

CAMPBELL, C. J., delivered the opinion of the court.

The testimony of one Garrett was a potent factor in producing the verdict of guilty. The accused sought to impeach Garrett, who was a witness for the State, by evidence that his general reputation for truth and veracity was bad, and in order to do this he produced a witness, Miller, and asked him if he knew the general reputation for truthfulness of Garrett in the community in which he lives? The witness replied, "That's a right delicate question to answer," and then counsel explained the question to mean, "if he (witness) knew what Garrett's neighbors generally thought of him as a man of truth and veracity," and insisted on an answer to the question thus explained. At this juncture the court stated to the witness that "general reputation meant what a majority of the people in Garrett's community, or the people with whom he was most

conversant, say of his character for truth and veracity." To this statement of the court the accused excepted, and the witness, thus instructed by the court, answered, " I cannot say what a majority say of him in that respect." Other witnesses produced by the accused immediately afterward severally replied that they did not know Garrett's general reputation for truth and veracity. One of them answered he could not say " what a majority of the people think of him " (Garrett). General reputation consists in what is generally thought of one by those among whom he resides and with whom he is chiefly conversant. Common opinion, that in which there is general concurrence; the prevailing opinion in that circle where one's character is best known ; what is generally said by those among whom he associates and by whom he is known, common report among those who have the best opportunity of judging of his habits and integrity, common reputation among his neighbors and acquaintances, are so many forms of expression by which an effort has been made to define wherein consists general reputation. It is not enough that an "impeaching witness professes merely to state what he has heard others say, for those others may be but few," and the opinions expressed by a few do not constitute general reputation. There must be general concurrence in an estimate of one's reputation to make general reputation or a reputation *which is general,* which is what is required. The bounds of the neighborhood or community in which one resides, or the number of persons whose opinion of him must be known to an impeaching witness to entitle him to answer that he knows the general reputation of another for truth, is not defined by law. The witness asked if he knows the general reputation of another must answer as a matter of conscience whether he does or not. If he answers he does not, that is an end of the examination legally. If he answers he does, he may be examined further, and on cross-examination the sources of his information may be inquired into and the extent of it. It may perhaps be justly said that general reputation consists in what at least a majority of those conversant with one think of him, and what they think ordinarily can be known only by what they say. While

this is true, it is also true that an impeaching witness need not to have heard a majority of a community or neighborhood or one's circle of associates say what they think of him who is proposed to be impeached in order to qualify him to answer that he is acquainted with his general reputation. If he has had such opportunities to become acquainted with his general reputation, and has learned enough of it to make him willing, on his responsibility as a witness, to answer that he is acquainted with it, he is qualified, and permitted to testify to it. Nothing is so precious as a good reputation, and the law does not permit the ill opinion of a witness or his inference from the ill opinion of a few to constitute general reputation. Reputation which is general, prevalent, concurred in generally by those familiar with one, is presumed to be indicative of actual character, and evidence of that is supposed to be useful as a guide to an estimate of the value of the testimony of its possessor, and it is this general reputation which the law permits to be testified of with respect to a witness.

The definition of general reputation given by the counsel of the accused in explaining to the witness was correct. The court was not content with this, and interposed with the statement already given in this opinion, which must have been intended by the court to convey an idea different from that expressed by the definition given by counsel. The statement of the court was doubtless understood by the witness, as the exception to it shows it was by counsel, to mean more than was imported by the definition by counsel. If the statement conveyed to the mind of the witness the idea that he must have heard a majority or a very large number of the neighbors of Garrett " say " what they thought of him or be able to say he knew definitely what a majority said of him, and must speak from an enumeration of the neighborhood, it misled. It was not necessary for him to have heard a majority or any given proportion of that undefined and undefinable circle designated as the neighborhood or community say what they thought of Garrett. He may have heard a sufficient number of those well acquainted with the habits and characteristics of Garrett express themselves to make him feel authorized to answer that he was

acquainted with his general reputation ; and while a witness should be cautious on this subject and not be encouraged to testify that he is acquainted with the general reputation of another, unless he knows *the generally prevalent sentiment of those most conversant with him*, he should not be repressed by telling him he must know what a majority say of him about whom he is called to testify. It is impossible to be definite on this subject. All that can be said is, as stated above, that the witness must answer on his responsibility and subject to cross-examination as to the sources, extent, and correctness of his information as to the matter of which he testifies. *Powers* v. *Presgroves*, 38 Miss. 227. He may have heard a sufficient number express themselves to be willing to say he knows the general opinion from the general concurrence in one view of a number great enough to be regarded as a fair index to the community.

One may know the general reputation of Sergeant S. Prentiss as a matchless orator, although he has heard a small proportion of those who felt the thrill of his unrivaled eloquence say what they thought of him.

If a witness asked the preliminary question as to his knowledge of the general reputation of another so answers as to show that he needs instruction, he should be informed what the law means by general reputation, and then be left to his responsibility in answering.

Impressed by the conviction that unintentional injury was done the accused by the action of the court in the matter herein discussed

*The judgment is for that error reversed and a new trial granted.*